CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 464-4047
Facsimile:  (808) 326-4800
E-Mail:      kculpepper@culpepperip.com

Attorney for Plaintiff
UN4 Productions, Inc.

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UN4 Productions, Inc.<br><br>     Plaintiff,<br><br> vs.<br><br>DOE<br><br>     Defendant.<br>_____ | **Case No.: 19-CV-92**<br>(Copyright)<br><br>**COMPLAINT; EXHIBITS 1-3**<br><br>**(1) DIRECT COPYRIGHT<br>  INFRINGEMENT**<br><br>**(2) CONTRIBUTORY<br>  COPYRIGHT<br>  INFRINGEMENT** |

## COMPLAINT

UN4 Productions, Inc. ("Plaintiff") files this Complaint against Defendant

Doe ("Defendant") and alleges as follows:

### I.  NATURE OF THE ACTION

1. This matter arises under the United States Copyright Act of 1976, as

20-005F

amended, 17 U.S.C. §§ 101, et seq. (the Copyright Act").

2.     The Plaintiff alleges that Defendant is liable for: (1) direct copyright infringement in violation of 17 U.S.C. §§106 and 501; and, (2) contributory copyright infringement.

## II.     JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4.     Defendant either resides in, solicits, transacts, or is doing business within this jurisdiction, and has committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that his acts would cause injury in this jurisdiction.  As such, Defendant has sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over each.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (b) upon information and belief, the Defendant resides, and therefore can be found, in this State.  Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases), because the Defendant resides or may be found in this District.

## III.   PARTIES

20-005F

6.     The Plaintiff UN4 Productions Inc. ("UN4") is a Nevada corporation with principal offices in Los Angeles, California.

7.     UN4 is an affiliate of Millennium Funding, Inc. (Millennium). Millennium a production company and distributor of a notable catalog of major motion pictures. (www.millenniumfilms.com).

8.     UN4 is the owner of the copyrights for the screenplay and motion picture in the Work "*Boyka: Undisputed IV*" a/k/a "*Undisputed 4*", (hereafter: the "Work") a major motion picture released in 2017.

9.     The Work is the fourth installment of a fighting franchise in which the protagonist "Boyka" offers to fight in a series of impossible battles to free his wife from a life of servitude.

10.     The true name and capacity, whether individual, corporate, associate or otherwise, of Defendant Doe is unknown to Plaintiff who therefore sues said Defendant by such fictitious name.  Defendant is known to the Plaintiff only by an Internet Protocol address ("IP address").  An IP address is a number that is assigned by an Internet Service Provider (an "ISP") to devices, such as computers, that are connected to the Internet.  The ISP to which a Defendant subscribes can correlate a Defendant's IP address to a Defendant's true identity.  As shown on Exhibit "1" attached hereto, the Defendant's acts of copyright infringement occurred using IP address 24.25.255.73 which can be traced to a physical address located within this

District.  Plaintiff intends to subpoena the ISP that issued the Defendant's IP address in order to learn the identity of the account holder for the IP address.  Often the account holder will be a proper Defendant in this case.  However, further discovery may be necessary in some circumstances in order to be certain of the identity of the proper Defendant.  Plaintiff believes that information obtained in discovery will lead to the identification of Defendant's true name and permit the Plaintiff to amend its Complaint to state the same.  Plaintiff is informed and believes, and based thereon alleges, that the fictitiously named Defendant participated in and is responsible for the acts described in this Complaint and damages resulting therefrom.

11.     Plaintiff alleges on information and belief that the Defendant named herein performed, participated in, or abetted in some manner, the acts alleged herein, proximately caused the damages alleged herein, and are liable to Plaintiff for the damages and relief sought herein.

## V.     FACTUAL BACKGROUND

### A. The Plaintiff Owns the Copyright to the Work

12.     The Plaintiff UN4 is the owner of the copyrights for the motion picture and the screenplay for the Work entitled "*Boyka Undisputed 4*", a major motion picture released in 2017.

13.     The Work is the subject of copyright registrations (Registration

4

20-005F

Number PA 2-031-176) for the motion picture and (Registration Number 3-798-816) the screenplay, and this action is brought pursuant to 17 U.S.C. § 411.  *See,* Exhibits "2" and "3".

14.    The Work is currently offered for sale in commerce.

15.    Defendant had notice of Plaintiff's rights through at least the credits indicated in the content of the motion picture which bore a proper copyright notice.

16.    Defendant also had notice of Plaintiff's rights through general publication and advertising associated with the motion picture, and packaging and copies, each of which bore a proper copyright notice

## B. The Defendant Used BitTorrent To Infringe the Plaintiff's Copyright

17.    BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

18.    The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

20-005F

### *1. Defendant Installed a BitTorrent Client onto his Computer*

19.     A BitTorrent "Client" is a software program that implements the BitTorrent Protocol.  There are numerous such software programs which can be directly downloaded from the Internet.

20.     Once installed on a computer, the BitTorrent "Client" serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

21.     According to the BitTorrent Peer ID convention, the BitTorrent Client sets the Peer ID and the first few characters are reserved to specify the Client application.

22.     Defendant installed a BitTorrent Client onto his or her computer.

### *2. The Initial Seed, Torrent, Hash and Tracker*

23.     A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using the Client he or she installed onto his or her computer.

24.     The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

25.     The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier

20-005F

known as a "hash" and records these hash identifiers in the torrent file.

26.     When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

27.     Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

28.     The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

29.     The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

30.     Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

7

### 3. Torrent Sites

31.    "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol.  There are numerous torrent sites.

32.    Some BitTorrent Clients such as Popcorn Time and Showbox automatically find Torrent Sites for users.

33.    Upon information and belief, Defendant went to a torrent site to upload and download Plaintiff's copyrighted Work.

### 4. Uploading and Downloading a Work Through a BitTorrent Swarm

34.    Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

35.    The BitTorrent protocol causes the initial seed's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

36.    Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

37.    In this way, all of the peers and seeders are working together in what is called a "swarm."

8

20-005F

38.     Here, Defendant participated in a swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

39.     In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

40.     Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

### 5. The Plaintiff's Computer Investigators Identified Defendant's IP Addresses as a Participant in a Swarm That Was Distributing the Plaintiff's Copyrighted Work

41.     The Plaintiff retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

42.    MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

43.    MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of: SHA1: 7E43BE43B0BC80433A8FDD082ACFE78F57094CF9 (the "Unique Hash Number") associated with the Work as well as hash values of other copyright protected content.

44.    The IP addresses, Unique Hash Number, and hit dates contained on Exhibit "1" accurately reflect what is contained in the evidence logs and show that Defendant had copied a piece of the Plaintiff's copyrighted Work identified by the Unique Hash Number during a series of transactions.

45.    Through each of the transactions, the Defendant's computer used the identified IP addresses to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

46.    MEU's agent analyzed each BitTorrent "piece" distributed by the IP address listed on Exhibit "1" and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

47.    MEU's agent viewed the Work side-by-side with the digital media file

that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

48.     MEU's agent confirming at least 65 instances of trafficking of copyright protected content including Plaintiff's Work between 1/28/2016 and 10/8/2018 at the IP address 24.25.255.73, each of these instances sharing common Peer ID prefix 2D55543.   *See* Exhibit "1".

49.     Upon information and belief, the same individual is responsible for the 65 instances of trafficking of copyright protected content.

## VI. FIRST CLAIM FOR RELIEF
### (Copyright Infringement)

50.     Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

51.     Plaintiff is the copyright owner of the Work which contains an original work of authorship.

52.     By using the BitTorrent protocol and a BitTorrent Client and the processes described above, Defendant copied the constituent elements of the registered Work that are original.

53.     The Plaintiff did not authorize, permit, or provide consent to the Defendant to copy, reproduce, redistribute, perform, or display its Work.

54.     As a result of the foregoing, Defendant violated the Plaintiff's exclusive right to: (A) Reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and

20-005F

501; (B) Redistribute copies of the Work to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501; (C) Perform the copyrighted Work, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Work's images; and, (D) Display the copyrighted Work, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Work non-sequentially and transmitting said display of the Work by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display.)

55.     The Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

56.     By engaging in the infringement alleged in this Complaint, the Defendant deprived not only the producer of the Work from income that could have been derived when this film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawaii and their employees, and, ultimately, the local economy.  The Defendant's misconduct therefore offends public policy.

57.     The Plaintiff has suffered damages that were proximately caused by the Defendant's copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

20-005F

## VII. SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement)

58.     Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

59.     By participating in the BitTorrent swarm, Defendant induced, caused or materially contributed to the infringing conduct of each other peer member of the swarm.

60.     The Plaintiff did not authorize, permit, or provide consent to the Defendant inducing, causing, or materially contributing to the infringing conduct of other peer members in the swarm.

61.     Defendant knew or should have known that the other BitTorrent users in a swarm with it were directly infringing the Plaintiff's copyrighted Work by copying constituent elements of the registered Work that are original.   Indeed, Defendant directly participated in and therefore materially contributed to other peer members' infringing activities.

62.     The Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

63.     By engaging in the contributory infringement alleged in this Complaint, the Defendant deprived not only the producer of the Work from income that could have been derived when this film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film,

20-005F

numerous owners of local theaters and retail outlets in Hawaii and their employees, and, ultimately, the local economy.  The Defendant's misconduct therefore offends public policy.

64.    The Plaintiff has suffered damages that were proximately caused by the Defendant's contributory copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

WHEREFORE, the Plaintiff respectfully requests that this Court:

(A) permanently enjoin Defendant from continuing to infringe the Plaintiff's copyrighted Work;

(B) order that Defendant delete and permanently remove the torrent file relating to the Plaintiff's copyrighted Work from the computers under Defendant's possession, custody, or control;

(C) order that Defendant delete and permanently remove the copy of the Work Defendant has on the computers under the Defendant's possession, custody, or control;

(D) award the Plaintiff either its actual damages and any additional profits of the Defendant pursuant to 17 U.S.C. § 504(a)-(b) or statutory damages in the amount of $150,000 pursuant to 17 U.S.C.  § 504-(a) and (c), whichever is greater;

(E) award the Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

20-005F

(F) grant the Plaintiff any and all other and further relief that this Court deems just and proper.

DATED: Kailua-Kona, Hawaii, February 22, 2019.

CULPEPPER IP, LLLC

/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Plaintiff
UN4 Productions, Inc.

20-005F