CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:       kculpepper@culpepperip.com

Attorney for Plaintiffs
UN4 Productions, Inc., and
Millennium Funding, Inc.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UN4 Productions, Inc., and Millennium Funding, Inc. | Case No.: 1:19-cv-92-SOM-RLP (Copyright) |
| Plaintiffs, vs. | **FIRST AMENDED COMPLAINT; EXHIBITS 1-4** |
| GARY MITCHELL GRAHAM | **(1) DIRECT COPYRIGHT INFRINGEMENT** |
| Defendant. | **(2) CONTRIBUTORY COPYRIGHT INFRINGEMENT** |

**FIRST AMENDED COMPLAINT**

UN4 Productions, Inc. and Millennium Funding, Inc. ("Plaintiffs") file this First Amended Complaint against now identified Defendant GARY MITCHELL GRAHAM ("Defendant") and allege as follows:

### I.   NATURE OF THE ACTION

1. This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the Copyright Act").

2. The Plaintiffs allege that Defendant is liable for: (1) direct copyright infringement in violation of 17 U.S.C. §§106 and 501; and, (2) contributory copyright infringement.

## II.   JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4. Defendant either resides in, solicits, transacts, or is doing business within this jurisdiction, and has committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that his acts would cause injury in this jurisdiction. As such, Defendant has sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over each.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (b) upon information and belief, the Defendant resides, and therefore can be found, in this State. Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases), because the Defendant resides or may be found in this District.

## III.   PARTIES

### The Plaintiffs

6.   The Plaintiff UN4 Productions Inc. ("UN4") is a Nevada corporation with principal offices in Los Angeles, California.

7.   UN4 is an affiliate of Millennium Funding, Inc. (Millennium). Millennium is a production company and distributor of a notable catalog of major motion pictures. (www.millenniumfilms.com).

8.   UN4 is the owner of the copyrights for the screenplay and motion picture in the Work "*Boyka: Undisputed IV*" a/k/a "*Undisputed 4*", ("First Work") a major motion picture released in 2017.

9.   The First Work is the fourth installment of a fighting franchise in which the protagonist "Boyka" offers to fight in a series of impossible battles to free his wife from a life of servitude.

10.   Millennium is the owner of the copyright for the motion picture in the Work "Mechanic: Resurrection" (hereafter: the "Second Work") a major motion picture released in 2016

11.   The Second Work is the sequel to the highly successful 2011 film "The Mechanic". The Second Work is a major production with notable actors, a national advertising campaign and a significant opening release in over 2,200 screens, promoted in part by its web site: http://www.mechanic.movie.

12. The Plaintiffs' motion pictures will be referred to collectively sometimes here sometimes as the "Works".

### The Defendant

13. Previously identified as DOE, Plaintiffs have discovered that Defendant is the individual at Internet Protocol (IP) address 24.25.255.73 who infringed the Works as shown in Exhibit "1".

14. An IP address is a number that is assigned by an Internet Service Provider (an "ISP") to devices, such as computers, that are connected to the Internet.

15. Charter Communications, the ISP for the IP address 24.25.255.73, had indicated that an elderly man of 70 plus years of age (referred to here as "JH") is the Internet subscriber during the time period shown in Exhibit "1" and that the Internet Service is located at JH's home in Kailua, Hawaii.

16. During the time period for which Charter Communications has indicated that JH was the Internet subscriber, over 1000 motion pictures, audio files and miscellaneous files were observed being pirated on the BitTorrent network by Plaintiffs' agent.

17. Upon information and belief, JH's residence is a stand-alone home with limited neighbors. Accordingly, it is unlikely a third party was able to obtain the consistent access for the observed activity through hacking or any other means making the Defendant an occupant and permissive user of the IP address.

18. The Defendant has been a resident and/or tenant of JH's residence, upon information and belief, since May 2014 and during the time period of the confirmed activity shown in Exhibit "1".

19. Based upon publicly available information, the nature and tastes of the motion pictures observed and confirmed pirated on the BitTorrent network are consistent with the interests of Defendant.

20. The Plaintiffs' agent also observed activity on the BitTorrent network at a second IP address to which the Defendant had access.

21. The nature and taste of the observed activity at the second IP address are consistent with the nature and taste of the observed activity at the IP address of JH.

## IV. JOINDER

22. Pursuant to Fed. R. Civ. P. 20(a)(1), each of the Plaintiffs are properly joined because, as set forth in detail above and below, the Plaintiffs assert: (a) a right to relief arising out of the same transaction, occurrence, or series or transactions, namely the use of BitTorrent by Defendant; and (b) that there are common questions of law and fact. The Defendant used the same internet service, the same software and same computer to download and distribute each of Plaintiffs' motion pictures in the same way.

## V. FACTUAL BACKGROUND

### A. The Plaintiffs Own the Copyrights to the Works

23.   UN4 is the owner of the copyrights for the motion picture and the screenplay for the First Work.  The First Work is the subject of copyright registrations (Registration Number PA 2-031-176) for the motion picture and (Registration Number 3-798-816) the screenplay, and this action is brought pursuant to 17 U.S.C. § 411.  *See,* Exhibits "2" and "3".

24.   Millennium is the owner of the copyright in the Second Work. The Second Work is the subject of a copyright registration (Registration Number PA 1-998-057), and this action is brought pursuant to 17 U.S.C. § 411. See Exhibit "4".

25.   The Works are currently offered for sale in commerce.

26.   Defendant had notice of Plaintiffs' rights through at least the credits indicated in the content of each of the motion pictures which bore a proper copyright notice.

27.   Defendant also had notice of Plaintiffs' rights through general publication and advertising associated with the motion pictures, and packaging and copies, each of which bore a proper copyright notice.

### B. The Defendant Used BitTorrent To Infringe the Plaintiffs' Copyrights

28.   BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

6

29. The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

### 1. *Defendant Installed a BitTorrent Client onto his Computer*

30. A BitTorrent "Client" is a software program that implements the BitTorrent Protocol. There are numerous such software programs which can be directly downloaded from the Internet.

31. Once installed on a computer, the BitTorrent Client serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

32. According to the BitTorrent Peer ID convention, the BitTorrent Client sets the Peer ID and the first few characters are reserved to specify the Client application.

33. Defendant installed a BitTorrent Client onto his or her computer.

### 2. *The Initial Seed, Torrent, Hash and Tracker*

34. A BitTorrent user that wants to upload a new file, known as an "initial

seeder," starts by creating a "torrent" descriptor file using the Client he or she installed onto his or her computer.

35. The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

36. The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Works, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

37. When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

38. Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

39. The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

40. The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Works, on them and facilitates the exchange of data among the computers.

41. Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

### 3. Torrent Sites

42. "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol. There are numerous torrent sites.

43. Some BitTorrent Clients such as Popcorn Time and Show Box automatically find Torrent Sites for users.

44. Upon information and belief, Defendant went to a torrent site to upload and download Plaintiff's copyrighted Work directly or indirectly through a BitTorrent Client such as Popcorn Time or Show Box.

### 4. Uploading and Downloading a Work Through a BitTorrent Swarm

45. Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Works) using the BitTorrent

protocol and BitTorrent Client that the peers installed on their computers.

46. The BitTorrent protocol causes the initial seed's computer to send different pieces of the computer file, here the copyrighted Works, to the peers seeking to download the computer file.

47. Once a peer receives a piece of the computer file, here a piece of the copyrighted Works, it starts transmitting that piece to the other peers.

48. In this way, all of the peers and seeders are working together in what is called a "swarm."

49. Here, Defendant participated in a swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

50. In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Works here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Works to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

51. Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has

10

downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Works.

### 5. The Plaintiffs' Computer Investigators Identified Defendant's IP Addresses as a Participant in a Swarm That Was Distributing the Plaintiff's Copyrighted Work

52. The Plaintiffs retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the internet to reproduce, distribute, display or perform the Plaintiffs' copyrighted Works.

53. MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

54. MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of: SHA1: 7E43BE43B0BC80433A8FDD082ACFE78F57094CF9 (the "First Unique Hash Number") associated with the First Work and SHA1: B4A81D27B29589DD704A84498780ED183F12EB69 (the "Second Unique Hash Number") associated with the Second Work as well as hash values of other copyright protected content.

55. The IP addresses, Unique Hash Numbers, and hit dates contained on Exhibit "1" accurately reflect what is contained in the evidence logs and show that

Defendant had copied a piece of the Plaintiffs' copyrighted Works identified by the First and Second Unique Hash Numbers during a series of transactions.

56.     Through each of the transactions, the Defendant's computer used the identified IP addresses to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Numbers.

57.     MEU's agent analyzed each BitTorrent "piece" distributed by the IP address listed on Exhibit "1" and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of each of the Works.

58.     MEU's agent viewed the Work side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

59.     MEU's agent confirming at least 65 instances of trafficking of copyright protected content including the First and Second Works between 1/28/2016 and 10/8/2018 at the IP address 24.25.255.73, each of these instances sharing common Peer ID prefix 2D55543.  See Exhibit "1".

60.     Upon information and belief, the same individual is responsible for the 65 instances of trafficking of copyright protected content.

**VI. FIRST CLAIM FOR RELIEF**
**(Copyright Infringement)**

61. Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

62. Plaintiffs are the copyright owners of the Works which each contains an original work of authorship.

63. By using the BitTorrent protocol and a BitTorrent Client and the processes described above, Defendant copied the constituent elements of the registered Works that are original.

64. The Plaintiffs did not authorize, permit, or provide consent to the Defendant to copy, reproduce, redistribute, perform, or display their Works.

65. As a result of the foregoing, Defendant violated the Plaintiffs' exclusive right to: (A) Reproduce the Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501; (B) Redistribute copies of the Works to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501; (C) Perform the copyrighted Works, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Works' images; and, (D) Display the copyrighted Works, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Works non-sequentially and transmitting said display of the Works by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display.)

66. The Defendant's infringements were committed "willfully" within the

meaning of 17 U.S.C. § 504(c)(2).

67. By engaging in the infringement alleged in this First Amended Complaint, the Defendant deprived not only the producers of the Works from income that could have been derived when this film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawaii and their employees, and, ultimately, the local economy. The Defendant's misconduct therefore offends public policy.

68. The Plaintiffs have suffered damages that were proximately caused by the Defendant's copyright infringements including, but not limited to lost sales, price erosion, and a diminution of the value of their copyrights.

## VII. SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement)

69. Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

70. By participating in the BitTorrent swarm, Defendant induced, caused or materially contributed to the infringing conduct of each other peer member of the swarm.

71. The Plaintiffs did not authorize, permit, or provide consent to the Defendant inducing, causing, or materially contributing to the infringing conduct of other peer members in the swarm.

20-005F 19-92

72. Defendant knew or should have known that the other BitTorrent users in a swarm with it were directly infringing the Plaintiffs' copyrighted Works by copying constituent elements of the registered Works that are original. Indeed, Defendant directly participated in and therefore materially contributed to other peer members' infringing activities.

73. The Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

74. By engaging in the contributory infringement alleged in this First Amended Complaint, the Defendant deprived not only the producer of the Works from income that could have been derived when this film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawaii and their employees, and, ultimately, the local economy. The Defendant's misconduct therefore offends public policy.

75. The Plaintiffs have suffered damages that were proximately caused by the Defendant's contributory copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

WHEREFORE, the Plaintiffs respectfully request that this Court:

(A) permanently enjoin Defendant from continuing to infringe the Plaintiffs' copyrighted Work;

(B) order that Defendant delete and permanently remove the torrent files relating to the Plaintiffs' copyrighted Works from the computers under Defendant's possession, custody, or control;

(C) order that Defendant delete and permanently remove the copy of the Works Defendant has on the computers under the Defendant's possession, custody, or control;

(D) award the Plaintiffs either their actual damages and any additional profits of the Defendant pursuant to 17 U.S.C. § 504(a)-(b) or statutory damages in the amount of $150,000 pursuant to 17 U.S.C. § 504-(a) and (c), whichever is greater;

(E) award the Plaintiffs their reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F) grant the Plaintiffs any and all other and further relief that this Court deems just and proper.

DATED: Kailua-Kona, Hawaii, May 10, 2019.

CULPEPPER IP, LLLC

/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Plaintiffs
UN4 Productions, Inc.,
Millennium Funding, Inc.